(47 App. Div. 273.)

### BRUCE v. FISS, DOERR & CARROLL HORSE CO.

(Supreme Court, Appellate Division, Second Department. January 9, 1900.)

1. SALE OF HORSE—RESCISSION—WARRANTY—BREACH—DAMAGES.

    Where a horse bought under a warranty that he was a suitable carriage horse to be driven by the buyer, a physician, kicked, bolted, and ran away, the buyer, after he has returned the horse to the seller, and been repaid his money, may recover on the warranty for the injuries to himself and vehicle, caused thereby, but not for injuries incurred by using it after he knew it was unsafe.

2. APPEAL—EXCEPTION—NECESSITY—RELIEF FROM EXCESSIVE LIABILITY.

    Where an appeal is taken from an order denying a new trial as well as from the judgment, appellant may be relieved from an excessive liability, though there is no exception thereto.

Appeal from trial term, Kings county.

Action by Frederick J. Bruce against the Fiss, Doerr & Carroll Horse Company. From a judgment for plaintiff, and from an order denying a new trial (56 N. Y. Supp. 234), defendant appeals. Judgment vacated, and order reversed on terms.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

Edward M. Grout, for appellant.

Charles P. Barker, for respondent.

PER CURIAM.[1] The action is brought for damages for breach of warranty, given on the sale of a horse, that the horse was "sound, kind, and true, and gentle and quiet in harness, and suitable for use by plaintiff in his profession as a physician, to drive in harness as a carriage horse." The damages sought to be recovered were for injuries for the plaintiff's person and his vehicle, arising from the kicking, bolting, and running away of the horse. Subsequent to

---

[1] This opinion was written by Mr. Justice CULLEN before his designation as an associate judge of the court of appeals, and is adopted by this court.

the occurrence of the damages complained of, the plaintiff returned the horse to the defendant, and was repaid his money; but, as the plaintiff testified, and as the jury found, without relinquishing his claim against the defendant for his damages. This resale of the horse substantially eliminated any element of damage for the impaired value of the animal, and the question presented by this appeal is whether, on a breach of the warranty declared on, the defendant is liable for the injury occasioned to the person and property of the plaintiff by the viciousness of the horse.

On a motion for a new trial the question of defendant's liability was reargued before the learned trial judge, who, in an opinion rendered by him, adhered to his ruling at circuit, and held that the action would lie. In this view we concur. In general, the measure of damages in an action for breach of warranty is "the difference between the value which the thing sold would have had at the time of the sale, if it had been sound, or corresponding to the warranty, and its actual value with the defect." 2 Sedg. Meas. Dam. § 762. But "where an article is warranted fit for a particular purpose, the purchaser can recover the damages caused by an attempt to use it for that purpose." Id. § 766. As to what special or consequential damages can be recovered in case of breaches of warranties of the latter class, the authorities are at variance. In England the cases go very far in allowing indemnity to a purchaser for any injury that may have resulted from a failure to make the warranty good. Where a ship's cable, which had been warranted to last two years, broke, recovery was permitted for both the chain and the anchor, which was lost by the parting of the chain. Borradaile v. Brunton, 8 Taunt. 535. Where the defendant sold a cow to a farmer with warranty that she was free from disease, and the cow was placed with other cows, to which the cow purchased communicated disease, she in fact being infected, it was held that the plaintiff could recover for the loss of the other animals. Smith v. Green, 1 C. P. Div. 92. Where a new pole was put into a wagon, which proved defective, and, as a result, the horses drawing the carriage were injured, it was held that the plaintiff could recover for the injury to the horses. Randall v. Newson, 2 Q. B. Div. 102. In these cases there was no charge of fraud on the part of the vendor, or, where such charge was made, it was negatived by the verdict of the jury. The liability was made to depend on the fact that the article warranted was sold to be applied to a particular purpose. Some authorities in this country have gone further; as Jones v. George, 61 Tex. 345, where the seller of what was supposed to be Paris green, but proved to be a different article, to be used in killing worms in a cotton field, was held liable for the value of the crop lost. In Sinker v. Kidder, 123 Ind. 528, 24 N. E. 341, a steam boiler, sold with warranty, exploded, and the vendee was allowed to recover for the loss of rentals from the mill in which it was placed. On the other hand, it was held in Alabama (Herring v. Skaggs, 62 Ala. 180) that, on the breach of a warranty that a safe was burglarproof, the value of property deposited therein could not be recovered; and in Minnesota (Schurmeier v. English, 46 Minn. 306, 48 N. W.

1112) it was held that the vendor of a warranted wagon was not liable for an injury to the horse that was drawing it. The leading authorities in this state seem in accord with the English rule. In two cases, purchasers of seed, with warranty of their character, were allowed to recover for the loss of the crops. Passinger v. Thorburn, 34 N. Y. 634; White v. Miller, 71 N. Y. 118. In Beeman v. Banta, 118 N. Y. 538, 23 N. E. 887, the warranty was that a freezer would keep chickens in condition, and the purchaser of the freezer was permitted to recover for the chickens lost. The evidence in this case was sufficient to warrant the jury in finding that the horse was sold to the plaintiff, not only with the warranty that he was sound, kind, and gentle in harness, but also that he was suitable for the plaintiff to drive as a carriage horse. We think one of the most natural and probable results of a breach of this warranty and from the viciousness of the horse would be injury to the vehicle and its occupants. Unless a distinction can be drawn between a warranty on the sale of a horse and that in case of the sale of any other article, we cannot see why the defendant is not liable under the authorities cited. This view is not necessarily inconsistent with the authority of Rich v. Smith, 34 Hun, 136. That decision proceeds upon the ground that the warranty in that case was general, and not a special warranty for any particular purpose.

But, where it is sought to recover for consequential damages on a breach of warranty, the plaintiff himself must be without fault. 2 Sedg. Meas. Dam. § 704. In Hitchcock v. Hunt, 28 Conn. 343, a quantity of pork was sold with a warranty that the barrels would not leak. The barrels did leak, and the pork was spoiled; but the vendee knew of the commencement of the leakage, and took no measures to avoid the injury to the pork. It was held that the loss of the pork was due to his own fault, and he could not recover for it, but only for the difference in value of the barrels. In Draper v. Sweet, 66 Barb. 145, which was a case of warranty, it was held that, when the defects in the property purchased are ascertained, "yet the purchaser persists in using it, whereby losses and expenses are incurred, he does it in his own wrong, and the law will not aid him in recovering any such demands." The plaintiff testifies that the day he got the horse, "without any provocation, the horse deliberately jumped, and then stood on his front legs, and kicked up into the buggy, and kicked the roof of the buggy, and run away down as far as Seventh street. In kicking into the buggy, he kicked me in the shin in the left leg." Some three weeks afterwards he harnessed the horse to a coupé, which the horse kicked and injured very greatly. The injury to the coupé was fixed at $196, or about two-thirds of the recovery. The learned trial court instructed the jury that, in case they found a verdict for the plaintiff, he was entitled to compensation for the injury to the coupé. We think that, on the plaintiff's own statement, he made this second experiment with the horse at his own risk. He knew the horse was vicious and dangerous. He should have ceased its use in any manner that would imperil person or property, and sought his remedy against the defendant on its warranty for the damage already suffered. It

cannot be possible that he was at liberty to continue the use of the horse as long as he saw fit, and hold the defendant liable for any damage that might be occasioned. There might be cases in which the question of the propriety of continuing to use the horse would be one of fact for the jury, but, on the plaintiff's own evidence, he must have known, after the first trial, that the horse was vicious and unsafe. The attention of the learned trial judge was not called to this subject, nor is there any exception which raises it; but the appeal is from the order denying the motion for a new trial, as well as from the judgment, and we have, therefore, the power to relieve the defendant from what we deem to be an excessive liability, even though there is no exception.

The order denying defendant's motion for a new trial should be reversed, and a new trial granted, upon payment by the defendant, within 20 days, of the trial fee and disbursements of the trial, in which case the judgment appealed from should be vacated. Upon failure to comply with said terms, the judgment and order should be affirmed, with costs.